(Not for publication)                                    (Docket Nos. 57, 60 )

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| S.C. a minor child by his parents, C.C. and K.C., | : |
| Plaintiffs, | : |
| v. | : |
| DEPTFORD TOWNSHIP BOARD OF EDUCATION, | : |
| Defendant. | : |

Civil No. 01-5127 (RBK)

**OPINION**

**KUGLER**, United States District Judge:

This matter comes before the Court upon cross-motions for summary judgment filed by Deptford Township Board of Education as the Third-Party Plaintiff and the Department of Education of the State of New Jersey as the Third-Party Defendant.  By way of the Third-Party Complaint in this matter, a local educational agency has raised claims against a state educational agency pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq.  For the reasons that follow, the Court finds that the IDEA does not create any such right of action for a local educational agency to sue the state.  Accordingly, the Court will grant the Third-Party Defendant's motion and will deny the Third-Party Plaintiff's motion.

## I.  BACKGROUND

Plaintiff S.C. suffers from autism and other impairments that interfere with his ability to

learn in an ordinary school environment.  Defendant Deptford Township Board of Education

("Deptford") is located in S.C.'s district of residence and is responsible under state and federal

law for providing a free appropriate public education ("FAPE") to S.C. and other disabled

children residing in that district. See 20 U.S.C. § 1413; N.J. Stat. Ann. §§ 18A:46-13, -14.

Prior to the commencement of this lawsuit, S.C. was a daytime student at the Bancroft

School, which is a facility focused on educating students with special needs.  In the years

immediately preceding this lawsuit, S.C. apparently regressed academically and exhibited an

increase in maladaptive behaviors. (Compl. ¶ 8.)  As a result, S.C.'s parents requested that

Deptford place S.C. into a full-time, residential program. (Compl. ¶ 9.)  After Deptford denied

their request, S.C.'s parents filed a petition with the New Jersey Department of Education

("DOE") for a due process hearing pursuant to 20 U.S.C. § 1415 and N.J. Admin. Code § 6A:14-

2.7.

In April and May of 2001, a due process hearing was held before the New Jersey Office

of Administrative Law.  The parties to the due process hearing included S.C.'s parents as the

petitioners and Deptford as the respondent.  Neither party to the due process hearing raised the

issue of whether any state entity should pay for S.C.'s residential placement.

On August, 21, 2001, Administrative Law Judge Joseph Fidler issued a final decision on

the matters raised in the due process hearing.  ALJ Fidler determined that: (1) Deptford had not

met its burden of showing by a preponderance of the credible evidence that it had offered an

appropriate Individualized Education Plan ("IEP") to S.C.; (2) S.C. was not receiving a

meaningful educational benefit as a day student at Bancroft; and (3) the credible evidence

demonstrated that S.C. required a residential placement of the sort provided by the Lindens

2

Program at Bancroft in order to benefit from a FAPE. C.C. & K.C. o/b/o S.C. v. Deptford Twp. Bd. of Ed., OAL Dkt. No. EDS 2069-01, 2001 WL 1023461, at *12 (Aug. 21, 2001).  ALJ Fidler specifically ordered Deptford to prepare an appropriate IEP for S.C. in accordance with his findings. Id.

   After Deptford failed to implement the ALJ's Order to the satisfaction of S.C.'s parents, S.C. and his parents filed the Complaint in this matter on October 26, 2001.  The Complaint asked the Court to (1) declare that Deptford's actions had denied and would continue to deny S.C. a FAPE; (2) order Deptford to implement ALJ Fidler's decision; and (3) order Deptford to reimburse S.C. and his parents for attorneys' fees and costs. (Compl. at 4.)  Deptford answered S.C.'s Complaint on December 3, 2001.  Along with its Answer, Deptford requested a stay of the ALJ's decision and filed a counterclaim against S.C. and his parents challenging the ALJ's findings.  The Court denied Deptford's motion for a stay and ordered Deptford to implement ALJ Fidler's decision. (See Order dated 12/7/01, at D.E. No. 10.)  There is currently no dispute remaining between Deptford and S.C. or S.C.'s parents.

   However, along with its Answer, Deptford also filed a Third-Party Complaint against the DOE and the New Jersey Department of Human Services, Division of Developmental Disabilities ("DDD") (collectively "State Defendants").  In the Third-Party Complaint, Deptford alleges that the IDEA obligated DOE and DDD to pay for the residential portion of S.C.'s education in the Lindens program at the Bancroft School. (Third-Party Compl. at 8.)  Additionally, Deptford alleges that DOE and DDD failed to establish an interagency agreement to provide for DDD's provision of services to disabled students who require such services as part

of their FAPE.[1] (Third-Party Compl. ¶ 30.)

In response, the State Defendants filed a motion to dismiss the Third-Party Complaint for failure to state a claim.  In an Order and Opinion dated August 7, 2002, Judge Orlofsky denied the motion to dismiss with respect to all third-party claims against the State Defendants except Deptford's claim for attorneys' fees.  See S.C. v. Deptford Twp. Bd. of Educ., 213 F. Supp. 2d 452 (D.N.J. 2002) ("Deptford I").  In reaching this decision, Judge Orlofsky concluded that the IDEA provided Deptford with an express right of action under 20 U.S.C. § 1415 to bring its reimbursement claims against the State Defendants. Id. at 459.  The decision also states that, assuming S.C. was entitled to the services of DDD, both DDD and DOE would be jointly and severally liable to reimburse Deptford for some of the expenses it incurred in providing a special education to S.C. See id. at 454-55, 466-67.

Shortly thereafter, the State Defendants moved for summary judgment as to the Third-Party claims against them on grounds of sovereign immunity.  In a decision dated March 14, 2003, Judge Orlofsky granted the motion as to DDD, but denied the motion as to DOE.  Consequently, DDD is no longer a party to this action. (See Order & Opinion dated 3/14/03, at D.E. Nos. 33, 34.)  The only remaining claims in this matter are Deptford's third-party claims against the DOE seeking reimbursement of the costs associated with S.C.'s residential placement and challenging the state's failure to promulgate an interagency agreement regarding DDD's

---

[1]The DDD is a division within the Department of Human Services that provides specialized services for the social, personal, physical and/or economic rehabilitation of eligible individuals with developmental disabilities. See N.J. Stat. Ann. § 30:6D-25.  These specialized services include providing residential programs to the extent the DDD's resources allow. See N.J. Stat. Ann. § 30:4-25.6.

provision of services to disabled students.

In July 2004, this case was reassigned from Judge Orlofsky to this Court, and in early 2005, both Deptford and the DOE filed the present cross-motions for summary judgment on Deptford's third-party claims against DOE.  However, in May 2005, after consultation with counsel for Deptford and the DOE, this Court administratively terminated this case without prejudice pending resolution of the <u>Lawrence Twp. Bd. of Ed. v. New Jersey</u> matter in the Third Circuit. (<u>See</u> Order dated 5/23/05, at D.E. No. 67.)  Because the <u>Lawrence</u> case involved similar issues, this Court, with the parties' consent, postponed decision on the cross-motions for summary judgment so that the Third Circuit could rule upon the same issues first.

After the Third Circuit handed down its decision in <u>Lawrence</u> in August 2005, both Deptford and the DOE submitted letter applications to the Court seeking to restore this matter and the pending summary judgment motions to the active list.  In addition to their original briefs, the parties also submitted supplemental briefing on the effect of the <u>Lawrence</u> decision and other recent case law bearing on similar issues.  The Court will address the parties' arguments and the relevant case law in turn.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving

for summary judgment. <u>Celotex</u>, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. <u>Id.</u> at 331. Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

## III. DISCUSSION

In its motion for summary judgment, Deptford makes two primary arguments, both of which rely heavily upon the decision in <u>Deptford I</u>.  First, with respect to its claim for reimbursement from the state, Deptford argues that Judge Orlofsky's ruling in <u>Deptford I</u> is binding as law of the case.  Specifically, Deptford contends that Judge Orlofsky already ruled in this case that (1) the IDEA provides Deptford with an express right of action against the DOE for reimbursement, and (2) the DOE must reimburse Deptford for S.C.'s residential placement costs if the court determines that S.C. was eligible for DDD's services.  Because counsel for S.C. has since indicated that S.C. was in fact eligible for DDD's services, Deptford argues that it is now entitled to summary judgment on its claim for reimbursement.  Second, Deptford argues that New Jersey has an obligation under the IDEA to promulgate an interagency agreement regarding provision of DDD's services to students like S.C.  Deptford cites <u>Deptford I</u> as support for its assertion that an LEA can bring a cause of action to force the state to formulate such an agreement.

6

In contrast, the DOE's cross-motion for summary judgment attacks <u>Deptford I</u> as being contrary to the terms of the IDEA, the Third Circuit's decision in <u>Lawrence</u>, and other relevant case law on similar issues.  First, the DOE argues that the law of the case doctrine does not restrict this Court's power to grant summary judgment in favor of DOE even though Judge Orlofsky previously denied DOE's motion to dismiss.  Although law of the case principles direct the Court's discretion, DOE points out that the doctrine is not a restriction on its power, nor does it preclude granting summary judgment just because a different judge denied a prior motion to dismiss using a more liberal standard.  Second, the DOE argues that, contrary to Judge Orlofsky's ruling, the IDEA does not expressly afford Deptford, or any local educational agency ("LEA"), a private right of action to pursue claims against the DOE, or any state educational agency ("SEA").  The DOE asserts that the language and purpose of the IDEA, as well as other case law interpreting the statute, demonstrate that the IDEA does not create an express or implied private right of action for an LEA to sue an SEA.  Additionally, the DOE argues that Judge Orlofsky applied the wrong analysis to determine whether a private right of action exists because he used the futility exception to the exhaustion requirement to conclude that Deptford had a right of action against the State Defendants.  Third, the DOE argues that the DDD is not obligated to pay for a residential placement required by the IDEA, nor is it otherwise bound to provide special education and related services to S.C.  As a result, DOE contends that it has no obligation to enter into an interagency agreement with DDD regarding DDD's provision of services to disabled students.  Finally, DOE contends that Deptford has already received its normal award of special education funding under the IDEA and related state provisions, such that an additional award for S.C.'s placement would be duplicative and contrary to the funding protocols of the

IDEA and state law.

To address the issues raised in the parties' cross-motions, the Court will first examine whether the IDEA creates a private right of action for Deptford to sue the DOE.  Because the Court finds that the IDEA does not provide Deptford with an express or implied private right of action against DOE, the analysis will then turn to law of the case principles and their effect on Judge Orlofsky's prior ruling in Deptford I.

**A.  Private Rights of Action under the IDEA**

Under the IDEA, state and local educational agencies can receive federal funding to provide a FAPE to disabled children. See 20 U.S.C. § 1412(a)(1).  To qualify for such funding, states must comply with several substantive and procedural requirements outlined in the IDEA. Lawrence Twp. Bd. of Educ. v. New Jersey, 417 F.3d 368, 370 (3d Cir. 2005) (citing Beth V. v. Carroll, 87 F.3d 80, 82 (3d Cir. 1996)).  In addition, New Jersey law obligates LEAs to provide an FAPE in accordance with the requirements set forth in the IDEA. Id. (citing N.J. Admin. Code § 6A:14-1.1(d)).

The present matter before this Court requires interpretation of some of the procedural safeguard provisions in the IDEA to determine whether those provisions grant Deptford a private right of action against the DOE.  However, before turning to the issue of statutory interpretation, the Court notes that various provisions of the IDEA were statutorily amended on December 3, 2004 with an effective date of July 1, 2005.  Neither party here argues that the new amendments should apply to this case, and in any event, amendments to the IDEA have prospective application only. See Lawrence, 417 F.3d at 370.  Consequently, the Court will apply the IDEA provisions that were in effect at the time the Third-Party Complaint was filed in December 2001.

8

See id. (citing Tucker v. Calloway County Bd. of Educ., 136 F.3d 495, 501 (6th Cir. 1998)

(internal citation omitted); Heather S. v. Wisconsin, 135 F.3d 1045, 1047 n.1 (7th Cir. 1997)).

The question of whether a federal statute creates a private right of action is primarily a

question of statutory construction. Rancocas Valley Reg'l High School Bd. of Educ. v. M.R., 380

F. Supp. 2d 490, 494 (D.N.J. 2005) (citing Touche Ross & Co. v. Redington, 442 U.S. 560, 568

(1979)).  In defining the appropriate analysis for determining whether a right of action exists, the

United States Supreme Court has explained that,

> [P]rivate rights of action to enforce federal law must be created by Congress.  The
> judicial task is to interpret the statute Congress has passed to determine whether it
> displays an intent to create not just a private right but also a private remedy.
> Statutory intent on this latter point is determinative.  Without it, a cause of action
> does not exist and courts may not create one, no matter how desirable that might
> be as a policy matter, or how compatible with the statute.

Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001) (internal citations omitted).  In accordance

with these principles, the Court must first examine the statutory language to determine whether

the IDEA creates an express right of action for an LEA against an SEA.  If no express right exists

in the statutory text, the Court must then determine whether Congress intended the IDEA to

provide an implied right of action.

### 1. Express Right of Action Analysis

Deptford originally alleged that section 1415 provides it with a private right of action

against the state; however, in its summary judgment papers, Deptford also contends that section

1412 provides the Court with jurisdiction to hear Deptford's claim against DOE. (See Third-

Party Pl. Reply Mem. at n.6.)  In any event, the language of those provisions is unclear at best

and does not expressly provide a local agency with the authority to sue a state agency under the

IDEA. <u>See</u> <u>County of Westchester v. New York</u>, 286 F.3d 150, 152 (2d Cir. 2002) ("the text of the IDEA contains no language that explicitly provides a private right of action for Counties to challenge the State's compliance with its provisions"); <u>Lawrence</u>, 417 F.3d at 371 (noting that the language of section 1415(b)(6) is "at best ambiguous" and does not provide LEA with express right of action against state).

First, the prefatory language in both section 1415(a) and section 1412(a)(6) "strongly suggests that Congress intended to provide a private right of action only to disabled children and their parents." <u>Id.</u> Specifically, section 1415 is entitled "Procedural Safeguards" and states that procedures shall be established and maintained in accordance with the terms of section 1415 "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education." 20 U.S.C. § 1415(a) (2001) (effective April 29, 1999). Similarly, section 1412(a)(6) is entitled "Procedural Safeguards" and provides that "children with disabilities and their parents are afforded the procedural safeguards required by section 1415 of this title." 20 U.S.C. § 1412(a)(6). In other words, the language in sections 1415 and 1412 explains that the procedural safeguards set forth in section 1415, which include the right to file suit under 1415(i)(2), are specifically designed to benefit disabled children and their parents as opposed to local educational agencies like Deptford.

Second, the structure of section 1415 demonstrates that LEAs like Deptford do not have an express right of action. <u>See</u> <u>Rancocas</u>, 380 F. Supp. 2d at 495. Significantly, section 1415(a) indicates that the procedures set forth in that section operate as safeguards to protect a child's right to FAPE. 20 U.S.C. § 1415(a). In section 1415(b), one of those procedures designed to protect the child's right to a FAPE is the "opportunity to present complaints with respect to any

matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b).  In turn, section 1415(f)(1) provides parents of a disabled child with a means through which they can raise such a complaint by providing that "wherever a complaint has been received under subsection (b)(6) or (k) of this section, the parents involved in such complaint shall have an opportunity for an impartial due process hearing." 20 U.S.C. § 1415(f)(1).  Following a final decision from the due process hearing, "any party aggrieved by the findings and decisions made under subsection (f) . . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section." 20 U.S.C. § 1415 (i)(2)(A).  Simply put, the procedures outlined in the provisions of section 1415 build upon one another, yet they all derive from the premise that a disabled child and his/her parents should have access to procedures to enforce the child's right to a FAPE.  As Judge Brotman succinctly stated in <u>Rancocas</u>, "when Congress created the federal right to a FAPE it vested the right in children with disabilities and gave the parents procedural devices to enforce their child's rights.  This structure simply does not, at the same time, create a federal right in a LEA." <u>Rancocas</u>, 380 F. Supp. 2d at 495.

Third, the language of section 1412 does not expressly create a right of action for an LEA to challenge the state's alleged failure to comply with any of the funding requirements set forth in section 1412.  Section 1412 is entitled "State Eligibility" and provides that a state is eligible for federal funding if it demonstrates to the satisfaction of the Secretary of Education that the state has policies and procedures in effect to ensure that it meets the conditions listed in section 1412.  20 U.S.C. § 1412(a).  With respect to reimbursement issues, subsection 1412(a)(12)(B)(ii) states:

> If a public agency other than an educational agency fails to provide or pay for the

> special education and related services described in clause (i), the local educational
> agency (or State agency responsible for developing the child's IEP) shall provide
> or pay for such services to the child. Such local educational agency or State
> agency may then claim reimbursement for the services from the public agency that
> failed to provide or pay for such services and such public agency shall reimburse
> the local educational agency or State agency pursuant to the terms of the
> interagency agreement or other mechanism described in subparagraph (A)(i)
> according to the procedures established in such agreement pursuant to
> subparagraph (A)(ii).

20 U.S.C. § 1412(a)(12)(B)(ii).  Although Deptford relies upon this language as providing a basis

for its claims against DOE, nowhere in this section does the IDEA provide LEAs with a private

right of action to challenge a state's compliance with IDEA provisions.  See County of

Westchester, 286 F.3d at 152 (noting that section 1412(a)(12) does not expressly provide an LEA

with a private right of action to challenge the lack of an interagency agreement).  Given that

section 1412(a)(12)(B)(ii) is silent as to any private right of action, any argument that section

1412(a)(12)(B)(ii) expressly creates such a right is erroneous.

Based on the language and structure of the IDEA in effect at the time the Third-Party

Complaint was filed, it is clear that Deptford does not have an express right of action against the

DOE.  Having made that determination, the Court must analyze whether the IDEA implies a

private right of action.

## 2.  Implied Right of Action Analysis

Whether a statute implies a private right of action is ultimately a question of

congressional intent.  In Cort v. Ash, 422 U.S. 66, 78 (1975), the Supreme Court recognized the

following four-factor test to determine whether a statute creates an implied right of action: (1)

whether the statute was enacted to benefit a special class; (2) whether the drafters intended to

create a private right of action; (3) whether a private right of action would be consistent with the

purposes of the statute; and (4) whether the cause of action is one not traditionally relegated to

the states. Cort v. Ash, 422 U.S. 66, 78 (1975).  In subsequent decisions, the Court indicated that

the second factor, congressional intent, is the dispositive element. Merrill Lynch, Pierce, Fenner

& Smith, Inc. v. Curran, 456 U.S. 353, 377-78 (1982); Transamerica Mortgage Advisors, Inc. v.

Lewis, 444 U.S. 11, 23-24 (1979).  That is, "unless congressional intent can be inferred from the

language of the statute, the statutory structure, or some other source, the essential predicate for

implication of a private remedy simply does not exist." Lawrence, 417 F.3d at 371 (quoting

Thompson v. Thompson, 484 U.S. 174, 179 (1988) (internal citations omitted)).  The burden of

proving congressional intent is on the party seeking to assert the private remedy (i.e. Deptford).

See Suter v. Artist M., 503 U.S. 347, 363-64 (1992).

 Several factors relating to the language and structure of the IDEA support the conclusion

that the IDEA does not provide Deptford with an implied right of action to sue DOE.  First, it is

extremely unlikely that Congress intended to create a right of action by a LEA against the state

when Congress did not expressly create that right of action, but did expressly create a private

right of action for "any party aggrieved" by the findings or decisions made under section 1415.

See Westchester, 286 F.3d at 152 (citing Transamerica, 444 U.S. at 20 ("In view of the express

provisions for enforcing the duties imposed . . . , it is highly improbable that Congress

absentmindedly forgot to mention an intended private action.") and Nat'l R.R. Passenger Corp. v.

Nat'l Ass'n of R.R. Passengers, 414 U.S. 453, 458 (1974) ("[W]hen legislation expressly

provides a particular remedy or remedies, courts should not expand the coverage of the statute to

subsume other remedies.")). In other words, because Congress explicitly provided a private right

of action in section 1415 for a limited class of claims that does not encompass Deptford's present allegations against the state, it is highly unlikely that Congress also intended to create a private right of action for Deptford in this context, but just failed to express that right in the statutory text.

Second, the private right of action that Deptford is attempting to assert is a funding disagreement between local and state agencies that is not entirely consistent with the purpose of the IDEA. Lawrence, 417 F.3d at 371. Whereas the IDEA is primarily concerned with the educational needs of disabled children, the present third-party complaint relates to Deptford's fiscal needs. See id.  As explained by the Third Circuit, this kind of "budgetary dispute between the local and state agencies is simply not among the private actions contemplated by the IDEA, and is traditionally the type of dispute left to state and local authorities."  Id.

Third, the language in the IDEA that delegates regulatory authority to the Secretary of Education militates against implying a private right of action. See Westchester, 286 F.3d at 153. The IDEA provides the Secretary with broad regulatory and enforcement powers. 20 U.S.C. §§ 1416, 1417.  Such a broad grant of powers to a federal agency is inconsistent with implying a private right of action because private actions would transfer interpretation authority from the Secretary to the courts. Westchester, 286 F. 3d at 153 (citing Conboy v. AT&T Corp., 241 F.3d 242, 253 (2d Cir. 2001)).

For all of these reasons, the Court finds that Deptford has not satisfied its burden of demonstrating that Congress intended to provide it with a private right of action to pursue its claims against the state.  However, because this finding contradicts the earlier ruling by Judge Orlofsky in Deptford I, the Court will proceed to examine in more depth the case law that

14

supports this Court's statutory interpretation of the IDEA.  The analysis will also address

Deptford's attempts to distinguish <u>Lawrence</u> and challenge its applicability to the present matter.

### 3. Case Law Applying Similar Statutory Analysis

As mentioned in the preceding statutory analysis, the Third Circuit recently addressed the

issue of whether the IDEA provides a private right of action for an LEA to sue the state for

reimbursement. <u>See</u> <u>Lawrence</u>, 417 F.3d 368.  In <u>Lawrence</u>, a disabled child, the child's parents,

and the local school district agreed that the child needed placement in a residential facility

because that child was autistic and a danger to herself. <u>Id.</u> at 369.  The child's parents requested

that DDD fund this placement, but DDD refused. <u>Id.</u>  The school board (Lawrence Township)

that had been financing the child's placement filed a federal action under the IDEA alleging that

the state of New Jersey was obligated to assume the cost of the placement. <u>Id.</u> at 369-70.  The

child and her parents never filed a complaint against the local school board, nor were they parties

to the action brought by the school board against the state. <u>Id.</u> at 370 n.2. The district court

concluded that Lawrence Township did not have a private right of action under the IDEA and

granted the state's motion to dismiss. <u>Lawrence</u>, 417 F.3d at 370.

On appeal, the Third Circuit affirmed the district court's dismissal finding that the IDEA

does not create an express or implied right of action for an LEA to bring an action against the

state. <u>Id.</u> at 372.  In reaching its conclusion, the court noted that the language of sections 1415(a)

and 1412(a) strongly suggest that Congress intended to create a private right of action <u>only</u> for

disabled children and their parents. <u>Id.</u> at 371 (emphasis added).  In addition, the Court found that

section 1415(b)(6) did not provide an express right of action for an LEA to sue the state. <u>Id.</u>

Even though section 1415(b)(6) is worded more generally than some of the other subsections in

1415, that fact alone did not indicate an intent to permit a private right of action by an LEA against the state. Id.  The Court concluded that, at best, the language of section 1415(b)(6) is ambiguous. Lawrence, 417 F.3d at 371.  Furthermore, as mentioned above, the Court found that the IDEA did not imply a private right of action because the dispute between Lawrence Township and the state was "a budgetary dispute that was not contemplated by the IDEA and was the kind of matter traditionally left to the state and local authorities." Id.

In its supplemental brief, Deptford argues that the present matter is distinguishable from Lawrence.  First, Deptford notes that Lawrence did not expressly overrule Deptford I, even though the Third Circuit was certainly aware of the decision at the time it decided Lawrence. Second, Deptford argues that in Lawrence the LEA brought a direct claim against the state without any due process hearing having taken place, whereas in the present matter an ALJ issued a final decision after a due process hearing, then the parents filed suit against the LEA, and then the LEA filed a Third-Party Complaint against the state.  Deptford suggests that this factual difference between the two cases means that Lawrence is not necessarily determinative of the present matter and does not require reconsideration of Judge Orlofsky's decision.  Third, Deptford contends that the scenario outlined in footnote 5 of the Lawrence opinion applies to the present matter.  In footnote 5, the Third Circuit noted:

> While there is some dispute as to whether an LEA may cross-claim against a state agency where both are sued by the parents, that issue is not presented here, and we do not address it. Compare Andrews, 880 F.2d at 1291 (holding that an LEA may not bring an action against the state, but noting that, in a suit brought by parents, "it may be that the LEA may defend by asserting that the state education agency is primarily and ultimately responsible for the [IDEA's implementation"), with Oak Park, 207 F.3d at 937 ("[a] local educational agency that has received its share of the federal appropriation must provide for services out of that share; it cannot collect more from the state by way of contribution).

16

Lawrence, 417 F.3d at 372 n.5.  In light of footnote 5 and the facts before the Third Circuit in

Lawrence, Deptford alleges that the correct interpretation of Lawrence is that "when a family

sues a Local Educational Agency ("LEA") for services under the IDEA, and the child is eligible

for services from another agency, such as DDD, the LEA may claim that the State is primarily

responsible." (Third-Party Pl. Supp. Mem. at 2.)

     The Court does not find Deptford's arguments regarding the Lawrence decision to be

persuasive.  First, although the Third Circuit did not expressly overrule Deptford I in Lawrence,

its silence on the matter is not necessarily an implicit approval of Judge Orlofsky's decision.

Rather, that silence is better construed as the Third Circuit's decision not to rule on a case that

was not presently before it, particularly when this Court had not yet issued a decision in the first

instance on the present cross-motions for summary judgment.

     Second, the slight variance in procedural posture between Lawrence and this case does

not mean that the reasoning and holding of Lawrence is inapplicable.  Here, a local school district

filed a Third-Party Complaint against the state seeking payment for an IDEA placement and

promulgation of an interagency agreement.  Much like an ordinary plaintiff, a third-party

complainant like Deptford must enjoy an express or implied right of action before it can seek

relief by way of a third-party complaint. See Bowers v. Nat'l Collegiate Athletic Ass'n, 346 F.3d

402, 433-34 (3d Cir. 2003) (finding that third-party plaintiff did not have right of action for

contribution under the ADA or Rehabilitation Act against third-party defendants because such a

right was not expressly or implicitly provided for in those statutes); Pennsylvania State

Employees Credit Union v. Fifth Third Bank, No. Civ. 1:CV-04-1554, 2005 WL 1154594, at * 1

(M.D. Pa. May 3, 2005) (noting that third-party complaint must contain statement establishing

third-party plaintiff's right to relief); 6 Charles Alan Wright, Arthur R. Miller & Edward H.

Cooper, Federal Practice & Procedure, § 1453 (2006) (noting that third-party complaint must

show that third-party plaintiff is entitled to relief from third-party defendant by pleading a

matured right of action).  However, in Lawrence, the Court found that there is no express or

implied private right of action for a school district to bring a complaint against the State seeking

payment for an IDEA placement or promulgation of an interagency agreement. Lawrence, 417 F.

3d at 372.  Therefore, because Lawrence establishes that there is no right of action for an LEA to

bring a *direct complaint* against the state seeking payment for an IDEA placement, there is

likewise no right of action for an LEA to bring a *third-party complaint* against the state seeking

payment for an IDEA placement.

        Third, the situation addressed in footnote 5 of the Lawrence opinion is not the same as the

present situation before this Court.  In Lawrence, the plaintiff LEA brought a direct claim against

the state defendant.  Here, the Court confronts a situation where the parents of S.C. filed a

complaint against the LEA seeking enforcement of the ALJ's decision, and then the LEA filed a

third-party complaint against the state.  In contrast to both of these situations, footnote 5

identifies a third procedural posture.  In particular, footnote 5 relates to a situation where the

parents of a disabled child file a direct action against both the LEA and the state, then as part of

its defense, the LEA cross-claims against the state co-defendant.  In identifying this third

procedural posture, the Third Circuit completely reserved decision or comment on whether the

LEA could cross-claim on those facts because that procedural posture was not presently before it.

Lawrence, 417 F.3d at 372 n.5.  Given that the procedural posture addressed in footnote 5 was

(1) not present on the facts of Lawrence, (2) not ruled upon by the Court in Lawrence, and (3) is

18

not before the Court in this case, Deptford's argument that footnote 5 authorizes Deptford to assert it's third-party complaint against the state is unpersuasive.

Shortly after the Third Circuit decided <u>Lawrence</u>, Judge Brotman decided a similar case in this district. <u>See</u> <u>Rancocas</u>, 380 F. Supp. 2d 490 (D.N.J. 2005).  In <u>Rancocas</u>, a local school district filed suit against the parents of a disabled child and the state of New Jersey after an ALJ held a due process hearing and ordered the school district to provide the disabled child with a twelve month residential placement. <u>Id.</u> at 491-92.  The school district brought suit against the parents and the state to avoid paying for the residential placement. <u>Id.</u> at 491.  The school district argued that <u>Deptford I</u> established that the IDEA provides an express right of action in favor of LEAs when LEAs are parties aggrieved by the ALJ's findings. <u>Id.</u> at 492.  However, the district court rejected that argument, recognizing that in <u>Lawrence</u>, "the Third Circuit rejected and overruled <u>Deptford</u> and held that the IDEA provides neither an express nor an implied right of action to an LEA." <u>Id</u>. at 495.  Relying upon <u>Lawrence</u>, the court in <u>Rancocas</u> determined that the IDEA did not provide the school district with a private right of action against the state. <u>Rancocas</u>, 380 F. Supp. 2d at 493-94.  In addition, the court found that the slight factual variances between the procedural postures of <u>Lawrence</u> and <u>Rancocas</u> did not preclude application of the <u>Lawrence</u> analysis in the <u>Rancocas</u> case. <u>Id</u>. at 496.  Specifically, the court stated "the Third Circuit's holding is particularly compelling to this Court as an analysis of congressional intent that, by its nature, does not change merely because this case has some slight factual variances." <u>Id</u>.

Much like <u>Rancocas</u>, another district court in this jurisdiction has likewise relied upon <u>Lawrence</u> to find that the IDEA does not provide LEAs with a private right of action against the state. <u>See</u> <u>Twp. of Bloomfield Bd. of Educ. v. S.C.</u>, No. Civ. 04-3725, 2005 WL 2320029 (D.N.J.

19

Sept. 22, 2005).  In Bloomfield, a local school district sued various state agencies and the parent of a disabled child. Id. at *1.  The school district's complaint challenged an ALJ's finding that the school district was required to pay for the child's residential placement. Id.  In addition, the complaint alleged that the state defendants failed to promulgate an interagency agreement pursuant to the IDEA, and as a result of their failure to do so, the school district had been burdened with the entire cost of the child's residential placement. Id.  In deciding the state defendant's motion to dismiss, the court addressed the issue of "whether the IDEA creates a private right of action for an LEA against the State to compel funding." Id. at *6.  Ultimately, the court found that the Third Circuit's decision in Lawrence was "dispositive" and, therefore, the court dismissed the school district's complaint against the state defendants. Bloomfield, 2005 WL 2320029, at *8.

    In addition to the Third Circuit, other circuits have also found that the IDEA does not provide an LEA with a private right of action against the state. See e.g., County of Westchester, 286 F.3d at 152; Bd. of Educ. of Oak Park & River Forest high Sch. Dist. No. 200 v. Kelly E., 207 F.3d 931, 935-36 (7th Cir. 2000) (finding that nothing in §1415(i) would authorize an award of financial relief in favor of LEAs); Andrews v. Ledbetter, et al., 880 F.2d 1287, 1290-91 (11th Cir. 1989) ("Congress did not grant LEAs the right to bring an action to ensure that the Act's mandates are carried out.").  In County of Westchester, a group of LEAs appealed a district court's dismissal of their IDEA claims against various state agencies. 286 F.3d at 151.  The Second Circuit upheld the district court's dismissal finding that the IDEA did not provide the LEAs with a private right of action to remedy a state's alleged failure to satisfy the conditions imposed by the IDEA on states that participate in the federal program. Id. at 151-52.  As a

20

preliminary matter, the Court noted that the IDEA clearly did not create an express right of action for an LEA; therefore, it focused its analysis on whether Congress intended to create an implied right of action. Id. at 152.  In that regard, the Court reasoned that the IDEA expressly provided a private right of action to any party aggrieved by the particular findings or decision under subsection 1415(i)(2)(A), but did not expressly provide a private right of action in favor of an LEA seeking to challenge the lack of an interagency agreement required by section 1412. Id. Thus, the Court concluded that it was highly unlikely that Congress intended to create such a right. Id.  Moreover, because the IDEA expressly allocates regulatory and enforcement authority to the Secretary of Education, it was similarly unlikely that Congress intended to create a private right of action that would tend to transfer regulatory interpretation and discretion away from the Secretary to the courts. Westchester, 286 F.3d at 153.  Accordingly, the Court found that the IDEA did not imply a right of action for LEAs against the state. Id.

In contrast to the foregoing cases, the majority of cases that Deptford cites in its motion papers are inapposite.  For instance, most of the cases in Deptford's summary judgment brief involve situations where a disabled child or the parents of a disabled child initiated an action against state agencies, as opposed to an LEA initiating a claim against the state agencies. See e.g., John T. v. Iowa Dept. of Educ., 258 F.3d 860, 862 (8th Cir. 2001); Gadsby v. Grasmick, 109 F.3d 940, 946-48 (4th Cir. 1997); Beth V. v. Carroll, 87 F.3d 80, 81 (3d Cir. 1996); David D. v. Dartmouth Sch. Comm., 775 F.2d 411, 414 (1st Cir. 1985); Kruelle v. New Castle County Sch. Dist., 642 F.2d 687, 689-90 (3d Cir. 1981).  Those cases do not address the relevant issue before this court – namely,  whether an LEA has a private right of action against the state.

Similarly, neither Todd D. v. Andrews, 933 F.2d 1576 (11th Cir. 1991) nor St. Tammany

Parish Sch. Bd. v. Louisiana, 142 F.3d 776 (5th Cir. 1998) analyze whether the IDEA confers a

private right of action upon an LEA to pursue claims against its parent SEA.  In Todd D., a

disabled student and his parents brought suit against both the LEA and SEA, and the LEA then

cross-claimed against the SEA. Todd D., 933 F.2d at 1579.  The cross-claim alleged that if the

student's educational placement was found to be inappropriate, the reason for that inappropriate

placement was the state's refusal to provide residential services to handicapped students who

could not be served by their LEAS. Id. at 1582.  On appeal, the court found that the student's

placement was inappropriate and that the case would need to be remanded for a determination of

whether the LEA was unable or unwilling to provide services to the disabled child. Id. at 1583.

Ultimately, if the LEA was unable or unwilling to provide the necessary services to the disabled

student, the SEA would be responsible for doing so under section 1414(d) of the IDEA's

predecessor statute, the Education for all Handicapped Children Act.  Unlike the LEA in Todd

D., Deptford is not alleging in a cross-claim that it is unable to provide services to S.C.  Rather, it

seeks reimbursement by way of a Third-Party Complaint.  Moreover, in St. Tammany, the court

dealt with "stay put" provisions and the allocation of the interim costs of a child's placement

pending resolution of the underlying litigation. St. Tammany, 142 F.3d at 783.   The court did not

address whether an LEA has a right of action against an SEA for reimbursement.  See Lawrence,

417 F.3d at 372 ("The court in St. Tammany never addressed the issue of whether an LEA has a

private right of action under the IDEA.").

　　　　Furthermore, although Deptford relies on Barbara Z. v. Orbradovich, 937 F. Supp. 710

(N.D. Ill. 1996) for the proposition that the IDEA provides an LEA with a private right of action

against the state, after Barbara Z., the Seventh Circuit recognized that the IDEA does not permit

courts to authorize "awards of financial relief in favor of local educational officials."  Bd. of Ed. Of Oak Park & River Forest High Sch. Dist. No. 200 v. Kelly E., 207 F.3d 931, 935-37 (7th Cir. 2000) (noting also that "[a] local educational agency that has received its share of the federal appropriation must provide for services out of that share; it cannot collect more from the state by way of contribution").  In light of the Oak Park decision and the relevant case law from the Third Circuit, the import of the Barbara Z. decision to the current matter is questionable at best.

Overall, the relevant case law supports the Court's conclusion that the IDEA does not provide Deptford with a private right of action against a state agency.  In other words, the weight of authority on the issue is contrary to Judge Orlofsky's prior ruling that the IDEA provides an LEA with an express right of action against the state.

### B.  Law of the Case Doctrine and Deptford I

Having determined that the IDEA itself, as well as the relevant case law interpreting the IDEA, both support the conclusion that there is no private right of action by an LEA against an SEA, the Court must analyze how law of the case principles affect the Court's ability to reconsider Judge Orlofsky's prior decision in this matter.

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983).  Nevertheless, the doctrine simply "directs a court's discretion, it does not limit the tribunal power." Id.  Law of the case doctrine does not preclude a court from considering a decision made in an earlier stage of a case when (1) there has been an intervening change in the law; (2) new evidence has become available; or (3) reconsideration is necessary to prevent clear error and manifest injustice. In re City of

Philadelphia Litig., 158 F.3d 711, 718 (3d Cir. 1998) (citing Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir. 1997)).  Moreover, when pure questions of law are at issue, law of the case principles "must be exercised less rigidly." Waste Conversion, Inc. v. Sims, 868 F. Supp. 643, 650 n.4 (D.N.J. 1994). Finally, the law of the case doctrine does not prevent a court from granting summary judgment where a court previously denied a motion to dismiss using the more liberal standards governing Rule 12 motions. See Lodato v. Ortiz, 314 F. Supp. 2d 379, 388 n.5 (D.N.J. 2004).

Applying these principles to the present matter, the Court finds that Judge Orlofsky's ruling in Deptford I is clearly erroneous on the issue of whether the IDEA provides Deptford with a private right of action.  In reaching the conclusion that Deptford has an express right of action under the IDEA to proceed against the state, Judge Orlofsky applied the incorrect analysis for determining whether a federal statute creates a private right of action. Compare Deptford I, 213 F. Supp. 2d 452 (D.N.J. 2001), with Westchester, 286 F.3d 150, and Lawrence, 417 F.3d 368, and Rancocas, 380 F. Supp. 2d 490, and Bloomfield, 2005 WL 2320029.  As Lawrence and its progeny demonstrate, the appropriate analysis involves looking first to the language and structure of the statute to determine whether it creates an express right of action, and if it does not, then the court must analyze whether Congress intended to create an implied right of action. However, rather than using this analysis, Judge Orlofsky applied the futility exception to the administrative exhaustion rule to find that Deptford had a right to proceed against the state.  His opinion states in relevant part:

> IDEA plaintiffs may raise claims not presented in the state due process hearing if, among other reasons, it would have been impossible or futile for them to have done so. See Honig v. Doe, 484 U.S. 305, 326-27, 108 S.Ct. 592, 98 L.Ed.2d 686

(1988) (citing <u>Smith v. Robinson</u>, 468 U.S. 992, 1014 n. 17, 104 S. Ct. 3457, 82 L.Ed.2d 746 (1984)); <u>Beth V. v. Carroll</u>, 87 F.3d 80, 88-89 (3d Cir.1996). <u>But see County of San Diego v. Cal. Special Educ. Hearing Office</u>, 93 F.3d 1458, 1465 (9th Cir.1996). The State Defendants do not dispute then-Judge Wolfson's lucid opinion in <u>L.P. v. Edison Bd. of Educ.</u>, 265 N.J. Super. 266, 278-80, 626 A.2d 473 (Law Div. 1993), in which he concluded that New Jersey state departments can not be joined as parties to a state due process hearing (unless, one supposes, the state agency is directly providing services to the child pursuant to 20 U.S.C. § 1413(h)). Therefore, it would have been futile for Deptford to have attempted to raise its claims against DDD or DOE before the ALJ.

The fact that exhaustion would have been futile, however, does not end the inquiry. States, in all likelihood, are unwilling to consider in their IDEA due process hearings a large universe of arguments that, in their view, are unrelated to the merits of the claim. To say that impossibility alone excuses compliance with § 1415(i)(2)(A) would therefore be to license suit on virtually any subject the plaintiff can imagine. That, surely, is an absurd result.

The Third Circuit's opinion in <u>Beth V.</u>, although it does not engage this problem directly, does nonetheless account for it. According to the court, the express language of § 1415(i)(2) can encompass not only grievances pertaining to matters actually raised in a due process hearing, but also issues that <u>could have been</u> the subject of a "complaint" under the IDEA had the state's procedures not prevented the aggrieved party from raising that subject in the due process hearing. <u>See Beth V.</u>, 87 F.3d at 85-88. The IDEA, the court noted, requires states to create an opportunity to present complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate education to such child." 20 U.S.C. § 1415(b)(6) (2000). As the court explained, this requirement would be frustrated if the State's failure to create proper procedures could itself bar disabled children from securing the relief the IDEA is designed to provide. . . . Thus, futility excuses compliance with § 1415(i) at least to the extent that the subject matter of the complaint in federal court could be described as "any matter relating to" one of the subjects covered by § 1415(b)(6).

It might be objected that while the State is obliged under § 1415(b)(6) to create an opportunity for disabled children and their parents to present complaints, it owes no similar duty to its own local school districts. Section 1415(b)(6), however, merely directs the State to create "an opportunity to present complaints"; it says nothing about to whom that opportunity must be granted. In contrast, § 1415(b)(1) states explicitly that the state must guarantee "an opportunity for the parents of a child with a disability" to examine the child's records and participate in the placement process. Thus, where Congress wanted to limit the beneficiaries of one

25

of IDEA's procedural rights, it clearly knew how to do so. There is, therefore, "no reason to believe that Congress meant to require schools alone to exhaust in all cases." Honig, 484 U.S. at 327, 108 S. Ct. 592; see also County of San Diego, 93 F.3d at 1469 (Marsh, J., dissenting) (arguing that county's claim against California state defendants was within "any matter relating to" the underlying IDEA administrative complaint, despite county's inability to raise that claim below).

S.C. v. Deptford Twp. Board of Ed., 213 F. Supp. 2d 452, 456-58 (D.N.J. 2002).

The Court finds several fatal flaws in the above-quoted analysis. First, the comparison of sections 1415(b)(6) and 1415(b)(1) is unpersuasive as an indication of congressional intent. Section 1415(b)(1) expressly grants parents a right to examine school records because the school records are generally in the possession of the LEA and the LEA is often the parents' adverse party in IDEA proceedings. It would be bizarre and unnecessary for Congress to grant an LEA access to records that the LEA already has. Therefore, the fact that section 1415(b)(1) only provides parents with the right to examine records does not mean that Congress intended for LEAs to present complaints pursuant to 1415(b)(6). See Lawrence, 417 F.3d at 371 ("While section 1415(b)(6) is crafted more broadly than other subsections, this fact alone does not indicate an intent to permit a private right of action by an LEA against a state."). Second, Judge Orlofsky's futility analysis puts the cart before the horse. His opinion suggests that because the state cannot be brought into a due process administrative hearing under the IDEA, it would be futile for an LEA to attempt to exhaust administrative remedies before bringing suit against the state. However, before a court can examine whether futility excuses a plaintiff's exhaustion requirement, the court must first determine whether the statute at issue provides the plaintiff with a cause of action. The analysis in S.C. I conflates the preliminary right of action analysis with exhaustion issues. As Judge Chesler succinctly noted in the lower court decision in Lawrence,

26

> This argument misses the point.  Whether administrative exhaustion would be
> "futile" involves an inquiry distinct from the determination of whether a statute
> provides a cause of action.  If an administrative proceeding would be futile
> because no cause of action exists, it would defy logic to waive the exhaustion
> requirement.  Moreover, waiving exhaustion so that a cause of action that does not
> exist in one tribunal could proceed in another would circumvent the purpose of
> administrative exhaustion.

Lawrence Township Bd. of Educ. v. State of New Jersey, Civ. No. 03-4073 (SRC), slip op. at 10

(D.N.J. Aug. 24, 2004).  In other words, the relevant case law demonstrates that nothing in

section 1415 permits an LEA to bring a private right of action against a state or initiate a due

process hearing against a state; therefore, it does not make sense to find that the futility exception

allows an LEA to pursue a federal cause of action under section 1415 that does not otherwise

exist.

Nonetheless, in Deptford I, Judge Orlofsky relied upon futility to conclude that the IDEA

provides Deptford with an express private right of action against the State Defendants.  Because

that conclusion and the analysis used to reach that conclusion are both clearly erroneous under

Lawrence and related case law, the law of the case doctrine does not prevent this Court from

reconsidering Judge Orlofsky's prior ruling.  Accordingly, this Court finds that the DOE is

entitled to judgment as a matter of law because the language and structure of the IDEA in effect

in 2001, as well as the relevant case law interpreting the IDEA, both indicate that the statute does

not provide Deptford with a private right of action against a state agency.

27

**IV.  CONCLUSION**

For the foregoing reasons, the Court will grant the Third-Party Defendant's cross-motion for summary judgment and deny the Third-Party Plaintiff's motion for summary judgment.  The accompanying Order shall issue today.

Dated:   6-23-06                                    s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge